**W.D. PRUITT, Appellant,**

v.

**Ronald BOX, D.V.M., Appellee.**

**No. 08–97–00456–CV.**

Court of Appeals of Texas, El Paso.

Dec. 3, 1998.

Rehearing Overruled Jan. 20, 1999.

Ken Slavin, Brower & Slavin, El Paso, for appellant.

Carl H. Green, Steven L. Hughes, Mounce, Green, Myers, Safi & Galatzan, El Paso, for appellee.

Before BARAJAS, C.J., LARSEN, and CHEW, JJ.

## OPINION

SUSAN LARSEN, Justice.

This is an appeal from a summary judgment in favor of the defendant veterinarian in a veterinary negligence case. We reverse the judgment and remand for further proceedings.

### FACTS

This is a summary judgment case which, the parties agree, was decided by a battle of expert affidavits. W.D. Pruitt, owner of "Buddy" the roping horse, sued Dr. Ronald Box for negligence and gross negligence after Buddy's death. Buddy died following an adverse reaction to anesthesia Dr. Box administered during a repair on Buddy's cracked hoof. Dr. Box moved for summary judgment on Pruitt's claims, relying on the affidavit of Dr. John McKee. In response, Pruitt relied on the affidavit of Dr. Wiley Heath. The trial court entered a take-nothing summary judgment against Pruitt and Pruitt appeals alleging in his single issue for review that Dr. Heath's affidavit created a fact issue on whether Dr. Box breached the applicable standard of care.

### STANDARD OF REVIEW

As articulated in *Nixon v. Mr. Property Management Co., Inc.,*[1] the standards for appellate review of a summary judgment are:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.[2]

When the defendant moves for summary judgment, as is the case here, it must disprove, as a matter of law, at least one of the essential elements of each of the plaintiff's causes of action, or it must establish one or more of its defenses as a matter of law.[3]

---

1. 690 S.W.2d 546 (Tex.1985).

2. *Id.* at 548–49.

3. *Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 471 (Tex.1991); *Bell v. Showa Denko K.K.,* 899 S.W.2d 749, 753 (Tex.App.—Amarillo 1995, writ denied).

## APPLICABLE LAW

In this case, defendant Dr. Box relies on Dr. McKee's affidavit to negate certain elements of Pruitt's negligence claims. At least one Texas court of appeals has found that veterinary negligence should be measured by the same elements applied in human medical malpractice cases: (1) a duty to meet the applicable standard of care; (2) a failure to meet the required standard; (3) injury; and (4) a reasonably close causal connection between the injury and the conduct.[4] We are not convinced that the standard applicable to medical malpractice on human beings should be applied to veterinary malpractice cases in light of Texas law relegating animals to personal property status.[5] Generally, a claim for professional malpractice is based in negligence.[6] The elements of a cause of action for negligence are well established. They are: (1) a legal duty owed by one person to another; (2) a breach of that duty; (3) the breach was an actual cause of injury; and (4) actual injury.[7] Accordingly, the more appropriate standard may be, as in other professional malpractice cases where money or personal property is at stake, a general negligence standard utilizing a standard of care applicable to a professional of ordinary skill and care in similar communities. At least one other jurisdiction has applied this standard to veterinary malpractice cases.[8] For purposes of our disposition of this case, however, we need not decide which standard to apply because we find that the issue of causation is dispositive and would be so under either the causation standard articulated for medical malpractice cases, or under the general "but for" or "actual" causation associated with general negligence.

## APPLICATION OF THE LAW TO THE FACTS

### 1. Breach of the Standard of Care

Dr. McKee opined in his affidavit that the hoof repair Dr. Box performed on Buddy was within the standard of veterinary care applicable to that type of procedure. He further established that Dr. Box's decision to administer general anesthesia, rather than a local anesthesia, during the hoof repair breached no standard of care applicable to veterinary practice. Dr. McKee also found Dr. Box's anesthesia protocol, pre-anesthesia evaluation of Buddy, and procedure during Buddy's recovery period to be within the standard of care and not negligent. Finally, Dr. McKee opined that it was "highly unlikely" that Buddy died as the result of an inadvertent injection of air in conjunction with the administration of the intravenous anesthesia because, "even the intentional injection of large amounts of air intravenously to attempt to euthanize an animal rarely results in its death."

In his controverting affidavit, Dr. Heath maintained that Dr. Box breached the standard of care by failing to follow the appropriate drying procedure for the hoof repair material, which lengthened the hoof's drying time, thus exposing Buddy to anesthesia for longer than necessary and increasing his chance of death. Additionally, Dr. Heath opined that Dr. Box failed to adequately evaluate Buddy's heart and respiratory rates prior to administration of additional anesthesia after the horse appeared to be coming out of the initial dose. Accordingly, Dr. Heath's affidavit established a fact issue with regard to a breach of the standard of care.

### 2. Causation

Dr. Box does not contend that Dr. Heath's affidavit failed to establish a fact issue on breach of the standard of care. Rather, he maintains on appeal that Dr. McKee's affidavit establishes absence of causation as a matter of law, uncontroverted by Dr. Heath's affidavit. We disagree.

4. *Downing v. Gully,* 915 S.W.2d 181, 183 (Tex. App.—Fort Worth 1996, writ denied).

5. *See, e.g.,* TEX. PROP CODE ANN. § 42.002(a)(10)(A); 42.002(a)(11) (Vernon Supp.1999) (listing horses and household pets as exempt personal property).

6. *See, e.g.,Cosgrove v. Grimes,* 774 S.W.2d 662, 664 (Tex.1989).

7. *Colvin v. Red Steel Co.,* 682 S.W.2d 243, 245 (Tex.1984).

8. *See Williams v. Reynolds,* 45 N.C.App. 655, 263 S.E.2d 853 (1980).

Dr. Box contends in his brief that "Dr. McKee affirmatively stated that the 'procedure' utilized by Dr. Box in treating the horse 'did not cause the death of the horse....'" The "procedure" to which Dr. McKee refers in his affidavit, however, is clearly the hoof repair procedure, not the anesthesia accompanying the procedure:

> The hoof repair performed by Dr. Box, which involved the use of Equilox (a polymer) and an immobilization device provided by Mr. Pruitt, the horse's owner, was well within the standard of care applicable to this type of hoof repair procedure. In any event, *the procedure itself* did not cause the death of the horse. [Emphasis added.]

Pruitt does not contend that the hoof repair procedure *itself* caused Buddy's death. Rather, it is the allegedly negligent administration of the anesthesia during the hoof repair and/or the allegedly longer than necessary exposure to anesthesia that Pruitt contends killed his horse. The statement in Dr. McKee's affidavit does not negate a causal link between the administration of anesthesia and Buddy's death.

Dr. Box also maintains that Dr. McKee negated causation in his affidavit by stating that the "fact that an animal dies during anesthesia is not, standing alone, an indication that the veterinarian was negligent in his care of that animal." This statement may serve to negate a breach of the standard of care, but breach of the standard of care and causation of injury from that breach are separate elements of the veterinary negligence cause of action.[9] Accordingly, Dr. McKee's assertion that the death of an animal standing alone does not indicate that a veterinarian was negligent in his or her care of that animal fails to negate causation as a matter of law.

Finally, Dr. Box argues that Dr. McKee's affidavit negates any causal link between the alleged administration of some air into the intravenous anesthesia and the horse's death. Dr. McKee's affidavit professes:

> It has been suggested that the intravenous injection of an air [sic] in conjunction with the administration of the intravenous medications used to anesthetize the horse may have caused its death. In my opinion, this is highly unlikely. In my experience, even the intentional injection of large amounts of air intravenously to attempt to euthanize an animal rarely results in its death.

That intravenous administration of air is "highly unlikely" to cause death in general, and "rarely" results in death even when intentionally administered does not conclusively establish that intravenous air did not result in the death in this case.

### CONCLUSION

We find that Dr. McKee's affidavit failed to negate causation as a matter of law in this case. Moreover, even if Dr. McKee's affidavit did tend to negate causation, Dr. Heath's affidavit was sufficient to create a fact issue. Dr. Heath opined that "Dr. Box's lack of familiarity with the product [used to repair the hoof] caused the horse to be under anesthesia longer, which increases the chance of death." This statement injects at least some evidence of causation. Accordingly, summary judgment was improper. We therefore sustain Pruitt's issue on appeal and reverse the summary judgment in favor of Dr. Box. We remand the case to the trial court for proceedings not inconsistent with this opinion.

---

9. *See Downing,* 915 S.W.2d at 183.