

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| NOEL LIFE, | § | No. 08-24-00081-CV |
| Appellant, | § | Appeal from the |
| v. | § | 120th District Court |
| ORLANDO GARZA D/B/A EAST EL PASO ANIMAL HOSPITAL and LUIS | § | Of El Paso, Texas |
| TERRAZAS D/B/A WEST TEXAS VETERINARY SERVICES, | § | (TC#2021DCV4356) |
| Appellees. | | |

**SUBSTITUTED MEMORANDUM OPINION**

We withdraw our opinion and judgment of March 26, 2025, and substitute the following opinion and corresponding judgment in its place. Appellant's motion for rehearing is denied.

Noel Life appeals from the trial court's order granting no-evidence and traditional motions for summary judgment in favor of Appellees Orlando Garza d/b/a East El Paso Animal Hospital and Luis Terrazas d/b/a West Texas Veterinary Services. For the following reasons, we affirm.

# I. BACKGROUND

This case stems from the death of Life's horse, Valentine. On December 9, 2020, the County of El Paso required Life to have Valentine examined by a veterinarian.[1] Life complied, and Valentine was seen by two veterinarians that day—Dr. Orlando Garza at East El Paso Animal Hospital and Dr. Luis Terrazas at West Texas Veterinary Services.

Valentine was first evaluated by Garza at East El Paso Animal Hospital. Garza documented that the horse was in "extremely poor shape with poor body condition and its hooves were long, overgrown, and obviously uncared for." There were no "gut sounds in any of the four quadrants," and based on his 40 years of veterinary experience, Garza determined Valentine was suffering from "colic." He treated the horse with 12cc of Banamine for pain, sedated it with 3.50cc of Xylazine and 1cc of Butorphanol, and administered one gallon of mineral oil. Garza reported that Valentine became more comfortable and gut sounds returned to one quadrant. This was the extent of the treatment he was able to provide; Garza advised Life that if Valentine's pain continued, she should take the horse to a facility that could provide more intensive treatment.

Following Garza's examination, Life took Valentine to Dr. Luis Terrazas at West Texas Veterinary Services. Terrazas, like Garza, diagnosed Valentine with "colic," and documented that because Garza had already treated it, Terrazas only administered IV fluids. Valentine died later that evening on December 9, 2020.

On December 25, 2021, Life, acting pro se, filed suit against East El Paso Veterinary Hospital. On December 29, 2022, Life added Garza d/b/a East El Paso Animal Hospital and Terrazas d/b/a West Texas Veterinary Services as defendants. Life named claims of negligence,

---

[1] Life alleged in one of her pleadings that it was her sister who called Animal Services.

misrepresentation, "intentional fraud," gross negligence, fraud, "intentional misrepresentation," "intentional deceptive misrepresentation," "intentional fraud," and "wrongful death overdose" against Appellees, alleging:

Defendants falsely claimed to be able to treat equine, instead ignored Plaintiff's stallion for over 7 hours, failed to provide any testing or equine diagnostics, failed to treat the equine for the injuries it sustained which was the reason for the emergency visit, caused complications by administering multiple overdoses of drugs without providing any testing, causing Plaintiff's stallion complications, defendants left stallion standing unattended for hours in their parking lots while they treated their dogs/cats patients also in the parking lot, then contradicted themselves (Deceptive trade practices) that they couldn't treat the Plaintiff's stallion, then contradicted themselves to say that they did not have the equine facilities, could not treat the Plaintiff's stallion, and they did not have the testing nor diagnostics necessary for equine patients at the end of hours of waiting (instead of at the time of arrival). The invoice confirms the time of payment, and amount paid along with several errors made by the defendants including errors in gender of stallion, errors in drugs dosages, errors in medical notes and it confirms that they made several mistakes which caused lethal complications leading to irreversible injury and subsequent fatal outcome of Plaintiff's horse, which died on the evening of December 9, [2020] after the defendants cluster of liable gross negligent and negligent errors which were preventable had the defendant's [sic] informed at the time of arrival that they don't [have] equine facilities and don't treat equine emergency patients at their practice.

Life also alleged that Appellees failed to perform any emergency treatment for Valentine's bleeding back leg,[2] and did not provide the requested blood testing or emergency diagnostics.

Appellees moved for no-evidence and traditional summary judgment on June 28, 2023. Attached as traditional summary judgment evidence were the affidavits of Garza and Terrazas. According to Garza, and contrary to Life's allegations, Life did not express any concern regarding an alleged gunshot wound to Valentine's leg and the horse was neither lame nor limping during the examination. Nor was any "history or concern for arsenic or toxicity [] ever provided by the owner. Never once during this visit was arsenic or toxicity ever mentioned and no testing for this

---

[2] Life alleged Valentine had sustained a gunshot wound to its back leg.

3

was requested." Terrazas likewise reported that Life did not express any concern regarding a gunshot wound, and Valentine exhibited no evidence of bleeding from such an injury, nor was the horse limping or lame. Moreover, contrary to Life's allegations, Terrazas indicated that she did not request blood testing for arsenic toxicity.

On March 7, 2024, the trial court granted summary judgment and ordered that "all claims and causes of actions asserted by Plaintiff Noel Life against Defendants, Dr. Orlando Garza d/b/a East El Paso Animal Hospital, Inc. and Dr. Luis A. Terrazas d/b/a West Texas Veterinary Services, LC, are dismissed with prejudice."[3]

This appeal followed.[4] Life complains on appeal that the trial court erred by granting both summary judgment motions.

## II. STANDARD OF REVIEW

We review a trial court's granting of summary judgment de novo; in doing so, "we take as true all evidence favorable to the nonmovant and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d

---

[3] While the timing is unclear, the record reflects that Life also initiated an administrative complaint against Garza with the Texas Board of Veterinary Medical Examiners. The complaint was ultimately dismissed on April 25, 2023, with the following final determination:

> The physical examination performed by each of the veterinarians is documented in the medical record, and neither record mentioned the gunshot mentioned by the owner, or even a lameness. Neither indicates any concerns about possible toxicity. A simple blood test for all possible toxicoses is simply something that doesn't exist; in reality, determining a specific toxin is often difficult, time consuming, and costly task. Without signs of toxicosis (neurological symptoms, diarrhea, endotoxemia, ptyalism, etc.), it is not typical for routine bloodwork to be run on a colic at initial presentation. Both veterinarians indicate a history and clinical signs consistent with colic, and both veterinarians administered treatment within the standard of care for colic[.] The reviewer's determination was approved by the Board at a public meeting.

[4] We note that Life's first appeal challenged the trial court's grant of summary judgment against East El Paso Veterinary Hospital. *Noel Life v. E. El Paso Veterinary Hosp.*, No. 08-22-00236-CV, 2022 WL 17543727, at *1 (Tex. App.—El Paso, no pet.) (mem. op.). That appeal was dismissed for want of jurisdiction. *Id.*

4

614, 624 (Tex. 2018). Where a party moves for summary judgment on both no-evidence and traditional grounds, we address the no-evidence grounds first. *Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017). "If the nonmovant fails to overcome its no-evidence burden on any claim, we need not address the traditional motion to the extent it addresses the same claim." *Id*. A defendant's no-evidence motion for summary judgment is properly granted if the plaintiff fails to produce at least a scintilla of evidence raising a genuine issue of material fact as to each challenged element of the plaintiff's claim. *Id.*

To prevail on a traditional motion for summary judgment, a defendant must conclusively negate at least one essential element of the plaintiff's claim or establish all the elements of an affirmative defense. *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 79 (Tex. 2015). If the defendant carries this burden, the burden shifts to the plaintiff to raise a genuine issue of material fact. *Lujan v. Navistar, Inc*., 555 S.W.3d 79, 84 (Tex. 2018). We affirm the summary judgment if any of the theories presented to the trial court are meritorious and preserved for appellate review. *See Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex. 1996).

### III. STANDARD FOR PRO SE LITIGANTS

As a preliminary matter, we note that though Life is representing herself, she is held to the same standard as a licensed attorney and required to comply with all applicable laws and rules of procedure. *Bardouche v. Bardouche*, No. 08-23-00248-CV, 2024 WL 2279211, at *2 (Tex. App.—El Paso May 20, 2024, pet. denied) (mem. op.); *see also Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184 (Tex. 1978) ("Litigants who represent themselves must comply with the applicable procedural rules, or else they would be given an unfair advantage over litigants represented by counsel.").

To present an issue for appellate review, a brief must, among other things, "state concisely and without argument the facts pertinent to the issues or points presented"; "state concisely all issues or points presented for review"; and "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." Tex. R. App. P. 38.1(f), (g), (i). The briefing requirements are not satisfied by merely uttering brief, conclusory statements unsupported by citations to legal authority. *Jonson v. Duong*, 642 S.W.3d 189, 194 (Tex. App.—El Paso 2021, no pet.). However, we construe briefs "liberally, but reasonably, . . . so that the right to appeal is not lost by waiver." *Lion Copolymer Holdings, LLC v. Lion Polymers, LLC*, 614 S.W.3d 729, 732 (Tex. 2020).

Here, Life alleges claims of negligence, gross negligence, misrepresentation, "deceptive trade practices[,]" fraud, "deceptive intentional misrepresentation[,]" false advertising, and "willful deceptive trade practices[.]" However, Life did not enumerate the elements of each claim or provide a legal analysis of each claim in her appellate briefing or in the trial court, with the exception of her negligence claim. Similarly, Appellees' motions for no-evidence and traditional summary judgment address only the negligence claim.[5] Accordingly, we construe Life's argument on appeal as one issue claiming the trial court erred in granting Appellees' no-evidence and traditional motions for summary judgment on her negligence claim. *See* Tex. R. App. P. 38.1.

## IV. ANALYSIS

According to Life, "there was extensive evidence filed in the court that in effect disqualified a 'no evidence' summary judgment and evidence and testimony that show defendants

---

[5] Appellees also briefly included in their no-evidence motion for summary judgment that there "is no evidence that Dr. Orlando Garza or Dr. Luis Terrazas engaged in fraud."

were and are in fact liable."[6] Appellees argue, as they did before the trial court, that Life failed to produce more than a scintilla of evidence in support of the essential elements of her claim.

Appellees rely on precedent from the Fort Worth Court of Appeals in maintaining that Life's cause of action is based on "veterinarian negligence" and should be analyzed under the standard applied to doctors in malpractice cases. *See McGee v. Smith*, 107 S.W.3d 725, 727 (Tex. App.—Fort Worth 2003, pet. denied) ("This court has held that veterinarian negligence cases are to be analyzed under the same standard applied to physicians and surgeons in medical malpractice cases."). Under that standard, a plaintiff must "establish by expert testimony: (1) the applicable standard of care; (2) the facts [showing defendants] deviated from that standard; and (3) that the deviation caused the [animal]'s death." *Id*. Under a general negligence cause of action, a plaintiff must show: "(1) a legal duty owed by one person to another; (2) a breach of that duty; (3) the breach was an actual cause of injury; and (4) actual injury." *Pruitt v. Box*, 984 S.W.2d 709, 711 (Tex. App.—El Paso 1998, no pet.) (acknowledging that a general negligence standard of care may be the appropriate standard because of "Texas law relegating animals to personal property status" but not deciding on a standard because the case turned on causation under either standard). Similar to *Pruitt*, the issue of causation in the present case is dispositive, whether evaluated under

---

[6] Throughout her briefs, Life also argues the trial court erred because it did not hold a hearing on the summary judgment motions. However, a hearing is not required; a court can rule on a motion for summary judgment by submission. *See* Tex. R. Civ. P. 166a*; see also Martin v. Martin, Martin & Richards, Inc*., 989 S.W.2d 357, 359 (Tex. 1998) ("An oral hearing on a motion for summary judgment may be helpful to the parties and the court, just as oral argument is often helpful on appeal, but since oral testimony cannot be adduced in support of or opposition to a motion for summary judgment, an oral hearing is not mandatory."). Life further argues the trial court erred because no jury trial was held. Though Life contends that her constitutional right to a jury trial was violated, a party's success on a summary judgment motion precludes the need for a jury trial. *See Fertic v. Spencer*, 247 S.W.3d 242 (Tex. App.—El Paso, pet. denied) ("When a party cannot show a material fact issue, there is nothing to submit to a jury, and the grant of summary judgment to the opposing party does not violate the constitutional right to a jury trial.").

the standard modeled after medical malpractice cases or under the standard associated with general negligence. *Id.*

Appellees moved for no-evidence summary judgment on Life's negligence claim. Specifically, Appellees argued Life failed to provide any evidence to show that Appellees deviated from any applicable standard of care or that any act or omission by Appellees proximately caused Valentine's death. Appellees further maintained that Life put forth no evidence to show Appellees committed any act or omission with gross negligence, malice, or any other required mental state that would justify an award of exemplary damages. The burden then shifted to Life to present evidence raising a genuine issue of material fact with regard to each contested essential element. *JLB Builders, L.L.C. v. Hernandez*, 622 S.W.3d 860, 864 (Tex. 2021) ("A properly filed no-evidence motion shifts the burden to the nonmovant to present evidence raising a genuine issue of material fact supporting each element contested in the motion.").

In response to Appellees' summary judgment motions, Life filed "Plaintiff's Opposition to Defendant's Motion for Dismissal and Opposition for Summary Judgment" on July 7, 2023. In support, Life attached three exhibits: Exhibit A—a copy of her previously filed "Motion to Consolidate Cases"; Exhibit B—a copy of a purported expert witness report of Rod Bergen; and Exhibit C—a copy of the invoice for the purported expert report. On January 16, 2024, Life filed a second "Plaintiff's Opposition to Defendant's Motions for Summary Judgment" without attaching any supporting evidence. Neither Life's "Motion to Consolidate Cases" (Exhibit A), nor the invoice for the purported expert report (Exhibit C) serves as a basis for raising a genuine issue

of material fact. Accordingly, our review of whether Life presented evidence raising a genuine issue of material fact as to each contested element is limited to the purported expert report.[7]

The pertinent contents of the report are as follows:

**Background:**
According to Ms. Life, the TX A&M toxicology labs while performing a postmortem diagnostics, of Valentine (her 9 year old stallion horse), determined, that the horse showed positive signs of arsenic poisoning. *Ms. Life further alleges* that the poison was administered by the Stabled Owner) where the horse was boarded), Rudolfo Avila.

*She further claims* that the TX A& M veterinarians administered four drugs without property assessing the cause of the symptoms.

.　　　.　　　.

**Incident:**
*Life has stated* that this is case where East El Paso Veterinary Hospital failed to properly care for her horse, as should be expected from a facility such as theirs." (emphasis added).

*According to Ms. Life*, the hospital is guilty of malpractice, as follows; they failed to treat her horse's bleeding leg, they failed to do a blood test, they failed to treat all of this in a timely manner (waiting over 6 hours), and they overdosed the horse with the wrong drugs. Valentine then died that same evening from shock, and by being overdosed by the Vets with multiple drug toxicity."

Also, in addition to the above, *she claims* that East El Paso Veterinary Hospital failed to treat a gunshot wound to the horse's hoof. *Ms. Life further claims* that the Veterinary facility is in violation of Federal and Texas Tort Claims Act, deceptive trade practices, and negligence wrongful death (Res Ipsa Loquitar).

**Standard of Care**
*While it is not clear* that there are laws regarding the Standard of Care for Veterinarians to be within a predefined standard of care, Veterinarians most certainly must perform their duties with a maximum degree of skill, care, and

---

[7] Life also argued the toxicology report "verif[ies] Arsenic positive and multiple drugs which do not treat toxicity[,]" and therefore established Appellees' negligence. However, although the toxicology report was on file at the time the trial court ruled, Life did not include it as summary judgment evidence. *See BP Am. Prod. Co. v. Zaffirini*, 419 S.W.3d 485, 513 (Tex. App.—San Antonio 2013, pet. denied) ("[Nonmovants'] response to [movant's] no-evidence motion failed to meet their burden to specifically identify the summary judgment evidence that supported their claims[.]"); *West v. Hamilton*, No. 07-07-0235-CV, 2008 WL 4527434, at *3 (Tex. App.—Amarillo Oct. 9, 2008, no pet.) (mem. op.) ("When presenting summary judgment proof, a party must specifically identify the supporting proof on file that he seeks to have considered by the trial court and he must attach entire documents to the summary judgment motion or response."). Even if the toxicology report had been included as summary judgment evidence, the report offers no evidence that Appellees caused Valentine's death.

diligence. Overall, they should follow principles, covering areas such as animal welfare, the veterinarian-client-patient relationship, standards of professionalism, honest, compliance with the law, and definitely acting within the boundaries of complete competence.

All veterinarians are expected to adhere to a progressive code of ethical conduct known as the Principles of Veterinary Medical Ethics (PVME).

Veterinarian shall be influenced only by the welfare of the patient, the needs of the client, the safety of the public and they shall provide competent veterinary medical clinical care under the terms of a veterinarian-client-patient relationship (VCPR).

Most importantly, a Veterinarian facility such as the East El Paso Veterinary Hospital must uphold the standards of professionalism, be honest in all professional interactions, respect the law and respect the rights of all clients.

*Ms. Life is contending that*, as stated in the foregoing dialogue, East El Paso Veterinary Hospital gross deviated from the principles that are clearly noted herein.

Appellees contend that Life's purported expert fails to identify the applicable standard of care or explain how it was not met by Appellees, provides no basis for his opinion, relies solely on Life's narrative rather than employing a scientific method, and omits any discussion of the analytical process by which he reached his conclusion, and is therefore unreliable. Appellees also assert that the report fails to support a conclusion that their conduct was the cause of Valentine's death. We agree.

Setting aside that the report does not include the purported expert's qualifications[8], it fails to raise a genuine issue of material fact to overcome the no-evidence summary judgment motion. Though the report states, "*it would appear* that the East El Paso Veterinary Hospital significantly failed to perform in accordance with the accepted Standard of Care for Veterinarians as it related to the untimely death of . . . Valentine," it only mentions general standards and does not identify any deviation from the general standards or breach by Appellees. As to causation, the report

---

[8] The purported expert merely states he has "extensive background qualifying [his] opinions, having been involved in over one hundred and thirty horse related cases (including 12 deaths) across the entire county."

10

likewise does not provide evidence supporting that any breach or deviation by Appellees caused Valentine's death. The report's conclusion reads:

> Given the above *narrative*, *it would appear* that the East El Paso Veterinary Hospital significantly failed to perform in accordance with the accepted Standard of Care for Veterinarians as it related to the untimely death of Ms. Life's horse, Valentine. However, researching the materials listed above under "Documentation", *according to Ms. Live* [sic], she feels that *the stable owner, Rudolfo Avila[] was directly involved in Valentine's death*" (emphasis added).

Nothing in the report "furnishes some reasonable basis for differing conclusions by reasonable minds as to" Appellees' negligence. *Kindred*, 650 S.W.2d at 63. Lacking any probative force, we find the report to be the legal equivalent of no evidence. *See id.*; *see also Ford Motor Co.*, 135 S.W.3d at 601 ("Evidence that is so slight as to make any inference a guess is in legal effect no evidence."). As Life has not raised a genuine issue of material fact at least as to causation under either negligence standard, the trial court did not err in granting Appellees' motion for summary judgment on no-evidence grounds. *Lightning Oil*, 520 S.W.3d at 45.

Because Life failed to satisfy her burden under the no-evidence summary judgment standard, we need not assess whether Appellees' evidence meets the traditional summary judgment standard. *Ford Motor Co.*, 135 S.W.3d at 600 ("If the plaintiffs fail to produce more than a scintilla of evidence under [the no-evidence] burden, then there is no need to analyze whether [the movant's] proof satisfied the Rule 166a(c) burden.").

Life's sole issue is overruled.[9]

## V.  CONCLUSION

---

[9] We need not reach Appellees' alternative arguments regarding why the trial court did not err in granting summary judgment. Tex. R. App. P. 47.1; *Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017). ("If the nonmovant fails to overcome its no-evidence burden on any claim, we need not address the traditional motion to the extent it addresses the same claim.").

11

Finding no error, we affirm the trial court's judgment. We deny Life's motion for sanctions and further deny her remaining pending motions as moot.[10]

LISA J. SOTO, Justice

April 22, 2025

Before Palafox and Soto, JJ., and Solis, Judge
Solis, Selena, Judge, sitting by assignment

---

[10] Life's motions denied as moot include a motion to vacate the trial court's order, a motion to recuse the Honorable Maria Salas Mendoza, and a motion to strike Appellees' "motion for summary judgment and no-evidence motion for summary judgment."